# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

---

ED HENRY LOYDE, )
)
    Plaintiff, )
)
vs. )       No. 2:15-cv-2528-JDT-dkv
)
STATE OF TENNESSEE, ET AL., )
)
    Defendants. )

---

## ORDER TO MODIFY THE DOCKET, GRANTING MOTIONS TO AMEND, DENYING REMAINING MOTIONS, PARTIALLY DISMISSING COMPLAINT AND DIRECTING THAT PROCESS BE ISSUED AND SERVED ON DEFENDANTS ROSS AND LYNETTE WILLIAMS

---

On August 7, 2015, Plaintiff Ed Henry Loyde ("Loyde"), who is confined in the Hardeman County Correctional Facility ("HCCF") in Whiteville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 for actions that occurred at the West Tennessee State Penitentiary ("WTSP") in Henning, Tennessee. (ECF No. 1.) After following the Order of this Court, on August 20, 2015 Loyde filed and a motion for leave to proceed *in forma pauperis*. (ECF Nos. 4 & 5.) On August 21, 2015, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(a)-(b). (ECF No. 6.). On December 9, 2015, Loyde filed a motion to amend the complaint to add Dr. Lynette Williams as a defendant. (ECF No. 9.) On April 20, 2016, Loyde filed a motion to file a second amended complaint that is intended to supplement, rather than supersede the prior pleadings. (ECF No. 15.) Loyde's motions to amend are GRANTED. Pursuant to the complaint and amended complaints, the Clerk shall record the Defendants as the

State of Tennessee; former Tennessee Department of Correction ("TDOC") Commissioner Derrick Schofield; former WTSP Warden James Holloway; TDOC Doctor Lynette Williams; WTSP Unit Manager Brent Williams; Correctional Officer ("C/O") First Name Unknown ("FNU") Ross; Centurian Health Care "(CHC"); Lauderdale County Sheriff Steve Sanders; Marva Temple, Mayor of the City of Ripley; TDOC Commissioner of Operations Jason Woodall; and Jon Pavletic, Mayor of the City of Henning.[1]  All of the individual Defendants are sued in both their individual and official capacities.

## I. THE COMPLAINT AND AMENDED COMPLAINT

Loyde alleges that on August 6, 2014, he was severely beaten by fellow inmate Brandon Moore ("Moore") in WTSP Unit 3-A-24.  (ECF No. 1 at 2.)  Defendant Ross came by the cell while the assault was occurring, and Loyde asked Ross to let him out and began kicking on the door because of the assault; however, Defendant Ross "went about his business."  (*Id.*)  Moore continued beating Loyde until C/O Parker, who is not named as a defendant, saw Loyde bleeding and called a code.  (*Id.*)  Loyde contends that at first, he had to fake having a seizure because of the beatings.  (*Id.*)  Loyde further alleges that he had a "busted head" and that his eyes were 'bleeding out of both sockets."  (*Id.* at 2.)

Loyde contends that the Lauderdale County Hospital made an imaging disk of his face and transferred Loyde to Regional One Hospital in Memphis because they did not have the equipment to treat him.  (*Id.* at 3.)  After he was admitted to the emergency room, Loyde was told by the doctor that he had a broken eye socket along with a cracked sinus canal.  (*Id.*)  Loyde was seen by an eye specialist the next morning who looked at the disk and explained to Loyde that he needed an operation to put a plate in his face to fix the sinus canal and eye socket and that

---

[1] The Clerk is DIRECTED to Modify the docket to include all named defendants.

2

if it was not fixed he would suffer a sinus infection.  (*Id.*)  Loyde alleges these injuries make it difficult to breathe, cause his sinuses to drain into his stomach, and cause his nose to run constantly.  (*Id.* at 2-3.)

Loyde alleges that he has been to the TDOC's Deberry Special Needs Facility in Nashville, Tennessee, but nothing was done because the WTSP medical department failed to send the imaging disk with his medical records.  (*Id.* at 3.)  Loyde contends that he now has sinus headaches every day and snores.  (*Id.*)  He requests that the State of Tennessee be required to provide him with an operation and that he be awarded monetary damages.  (*Id.* at 4.)

In his second amended complaint, Loyde asserts claims pursuant to 42 U.S.C. §§ 1981, 1983, 1985(2)-(3), and 1986 and pursuant to Title II of the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132.  (ECF No. 15-1 at 1.)  He includes allegations against a number of additional Defendants.  Loyde alleges that Defendants Schofield, Woodall, and Holloway failed to address and to further investigate or discipline the grievances filed by Loyde, which complained of Defendant Ross's actions and the failure to get Loyde necessary medical care.  (*Id.* at 8-9.)

Loyde contends that he was seen by Defendant Lynette Williams after the incident and requested medical treatment and care; however, Defendant Lynette Williams failed to provide medical treatment and care to Loyde.  (*Id.* at 9.)

In addition to the previous allegations against Defendant Ross, Loyde further alleges that Defendant Ross, along with an unknown Unit Manager, "spontaneously" moved Moore into the cell with Loyde "to have him segregated from population as a result of his convicting offense." (*Id.* at 10.)  As background, Loyde alleges that prior to the incident Moore told him why Defendant Ross moved Moore into Loyde's cell and that Moore was going to "beat [him] up

because of [Loyde's] charges." (*Id.* at 15; *see also* Ex. B at 2, ECF No. 15-4.)[2] After the assault, Loyde told Defendant Ross that he wanted Moore charged with aggravated assault. (*Id.*) Loyde blames the unit manager for allowing his charges to be put in the hands of "untrained officer, staff, employee and etc." (*Id.*, *see also* Exs. A-H.) Further, Defendant Ross allegedly stood at the cell door and failed to intervene until he felt the beating was "enough." (*Id.* at 19.)

Loyde contends that CHC failed to train its staff and employees properly, resulting in Loyde being exposed to a risk of serious bodily harm and injuries. (*Id.* at 11.) Similarly, Loyde contends that Defendants Sanders, Temple, and Pavletic failed to address the acts of other Defendants, failed to investigate Loyde's claims, and failed to provide the proper training. (*Id.*at 11-12.)

Loyde asserts that the medical authorities, staff, and employees "deemed that Loyde was not entitled to the medical liberty and property interests for which he request professional medical treatment." (*Id.* at 13.) Further, he was denied his "administrative" Due Process rights by the failure to treat him as well as the failure to prosecute Moore. (*Id.*) Loyde argues that the Defendants' acts and conduct constitute civil conspiracy, fraud, and fraudulent misrepresentation. (*Id.*)

Loyde contends that Defendants violated his Eighth Amendment rights by failing to protect him from Moore, failing to provide him with the requested medical treatment, and failing to provide humane conditions of confinement. (*Id.* at 17-18.) Additionally, Loyde alleges that Defendant Sheriff Sanders failed to investigate the "criminal incident" that occurred at WTSP and failed to seek indictments against inmate Moore. (*Id.* at 22.)

---

[2] Although Plaintiff never specifically states what his "charges" are, it appears he may be a convicted sex offender. (*See id.* at 15.)

Loyde's second amended complaint seeks a judgment award of $2.5 million.  (*Id.* at 29-30.)

## II. ANALYSIS

A.    <u>Screening and Standard</u>

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Federal  Rule of  Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007).  *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'"  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original).  "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause

of action on behalf of *pro se* litigants.  Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party.  While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B.        § 1983 Claim

Loyde filed his original complaint on the court-supplied form for actions under 42 U.S.C. § 1983 which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements:  (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

In his second amended complaint, Loyde asserts claims under 42 U.S.C. §§ 1981, 1983, 1985(2)-(3) and 1986 and under Title II of the ADA, 42 U.S.C.S. § 12131, *et seq.*  (ECF No. 15-1 at 1.)

Although the complaint is ostensibly brought under 42 U.S.C. §§ 1981, 1985 and 1986, it does not assert any valid claims under those provisions. The actions about which Loyde complains do not violate those statutes. Under 42 U.S.C. § 1981:

> all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

The statute thus "prohibits racial discrimination in the making and enforcement of private contracts." *Runyon v. McCrary*, 427 U.S. 160, 168 (1976). In this case, there is no allegation that the Defendants interfered with Loyde's right to make or enforce a contract on account of his race. Therefore, the complaint fails to state a claim under 42 U.S.C. § 1981.

Loyde also purports to sue under 42 U.S.C. §§ 1985(2) and (3). Section 1985(2) provides as follows:

> (2)    Obstructing justice; intimidating party, witness, or juror
>
> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws . . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Section 1985(2) contains two separate provisions, separated by a semicolon. *Williams v. St. Joseph Hosp.*, 629 F.2d 448, 451 (7th Cir. 1980). *See generally Kush v. Rutledge*, 460 U.S.

719, 724-25 (1983). "The first clause of § 1985(2) . . . forbids a conspiracy to deter a party or witness in a federal court from attending or testifying in court, punishing parties or witnesses for having attended or testified in federal court, or influencing or punishing federal jurors." *Warner v. Greenebaum, Doll & McDonald*, 104 F. App'x 493, 497 (6th Cir. 2004). Loyde's complaint does not state a claim under the first clause of § 1985(2) because there is no allegation that Defendants attempted to deter Loyde from attending or testifying in any federal court.[3]

The complaint also does not assert a valid claim under 42 U.S.C. § 1985(3), which prohibits conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws."

> [I]n order to state a cause of action under § 1985, the plaintiff must allege that the defendants (1) conspired together, (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, (3) and committed an act in furtherance of the conspiracy, (4) which caused injury to person or property, or a deprivation of any right or privilege of a citizen of the United States, and (5) and that the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus.

*Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999); *see also Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007). The complaint alleges no facts to suggest that the conduct of any Defendant was motivated by racial animus.

A claim under 42 U.S.C. § 1986 is entirely derivative of a valid claim pursuant to 42 U.S.C. § 1985. *Bass*, 167 F.3d at 1051 n.5. Because Loyde's has no valid claim under § 1985, he also has no claim under § 1986.

---

[3] The second clause of § 1985(2), which "applies to conspiracies to obstruct the course of justice in state courts," *Bragg v. Madison*, 20 F. App'x 278, 285 (6th Cir. 2001), is not applicable to Plaintiff's claims.

Loyde also purports to sue under Title II of the ADA, 42 U.S.C. § 12131 *et seq.* Title II of the ADA provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* § 12132. "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* § 12131(2). The term "public entity" includes "any State . . . government" and "any department, agency, special purpose district, or other instrumentality of a State[.]" *Id.* § 12131(1)(A)-(B). The Supreme Court has held that Title II of the ADA applies to prisoners housed in state prisons. *Pennsylvania v. Yeskey*, 524 U.S. 206, 213 (1998). Thus, Title II applies to claims that an inmate has been denied the benefit of, or excluded from participation in, "recreational activities, medical services, and educational and vocational programs." *Id.* at 210 (internal quotation marks omitted).

Although Plaintiff's ADA claim suffers from several deficiencies, it is unnecessary to address each defect in detail because a claim about substandard medical care ordinarily is not actionable under Title II of the ADA. *See, e.g., Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012) ("Brown's complaint merely asserts that defendants violated the ADA and fails to allege any facts that demonstrate that the alleged inadequate or improper medical care he received was because of a disability."); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (per curiam) (challenge to medical treatment decisions not actionable under ADA); *Fitzgerald v.*

*Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) ("purely medical decisions . . . do not ordinarily fall within the scope of the ADA"); *Spencer v. Easter*, 109 F. App'x 571, 573 (4th Cir. 2004) (per curiam) (claim of inadequate medical care not actionable under the ADA absent evidence of discriminatory intent arising from prisoner's disability); *Baldridge-El v. Gundy*, No. 99-2398, 2000 WL 1721014, at *2 (6th Cir. Nov. 8, 2000) (ADA does not provide a cause of action for medical malpractice); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("the [ADA] would not be violated by a prison's simply failing to attend to the medical needs of its prisoners").

Although Loyde alleges that he has been discriminated against, he does not have a valid equal protection claim against any Defendant. The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. Most Equal Protection claims "allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990) (internal quotation marks and citation omitted). The complaint does not allege that Plaintiff is a member of a protected class.[4] That Plaintiff may have been treated differently than other prisoners is insufficient to state a claim because prisoners are not a protected class for equal protection purposes. *See, e.g., Harbin-Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir. 2005); *Berry v. Traughber*, 48 F. App'x 483, 485 (6th Cir. 2002); *Garrison v. Walters*, No. 00-1662, 2001 WL 1006271, at *2 (6th Cir. Aug. 24, 2001); *Heddleston v. Mack*, No. 00-1310, 2000 WL 1800576, at *2 (6th Cir. Nov. 30, 2000) ("prisoners incarcerated at the same institution as Heddleston who wished to mail items

---

[4]Alternatively, a plaintiff may allege that the challenged action unduly burdens the exercise of a fundamental right. This case does not involve the exercise of a fundamental right.

weighing more than one pound on January 9, 1999, do not constitute a protected class"); *Aldred v. Marshcke*, No. 98-2169, 1999 WL 1336105, at *1 (6th Cir. Dec. 20, 1999); *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999); *Preston v. Hughes*, No. 97-6507, 1999 WL 107970, at *1 (6th Cir. Feb. 10, 1999); *Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998) ("neither indigents nor prisoners are a suspect class"); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997).

This also is not an appropriate case for a "class of one" Equal Protection claim.

> The purpose of [the Equal Protection Clause] is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents. . . . Equal protection challenges are "typically . . . concerned with governmental classifications that affect some groups of citizens differently than others." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008) (internal quotation marks and citation omitted). However, the Supreme Court has recognized that a "class-of-one" may bring an equal protection claim where the plaintiff alleges that: (1) he or "she has been intentionally treated differently from others similarly situated"; and (2) "there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000).

*United States v. Green*, 654 F.3d 637, 650-51 (6th Cir. 2011) (additional internal quotation marks and citation omitted); *see also Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (distinguishing "class of one" claims from other equal protection claims evaluated under the rational basis standard).

The complaint does not allege that Loyde was arbitrarily treated differently than similarly situated prisoners at the jail or that he has a valid claim for a "class of one."

Claims against defendants in their official capacity are properly asserted against their employers. For Defendants Schofield, Holloway, Lynette Williams, Brent Williams, Ross, and Woodall that is TDOC, which is already a named Defendant. Claims against TDOC are construed as claims against the State of Tennessee, which is also a named Defendant. For

Defendants Sanders and Temple the employer is the City of Ripley and for Defendant Pavletic it is the City of Henning.

Plaintiff cannot sue the State of Tennessee under 42 U.S.C. § 1983. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Employees of Dep't of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973); *see also Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). By its terms, the Eleventh Amendment bars all suits, regardless of the relief sought. *Pennhurst*, 465 U.S. at 100-01. Tennessee has not waived its sovereign immunity. Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Claims against the Cities of Ripley and Hennings are claims against a local government. A local government "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691 (1978); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). A

municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Co., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "Where a government 'custom has not received formal approval through the body's official decisionmaking channels,' such a custom may still be the subject of a § 1983 suit." *Alkire*, 330 F.3d at 815 (quoting *Monell*, 436 U.S. at 690-91). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Co. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in original).

Although civil rights plaintiffs are not required to plead the facts demonstrating municipal liability with particularity, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993), the complaint must be sufficient to put the municipality on notice of the plaintiff's theory of liability, *see, e.g., Fowler v. Campbell*, No. 3:06CV-P610-H, 2007 WL 1035007, at *2 (W.D. Ky. Mar. 30, 2007); *Yeackering v. Ankrom*, No. 4:05-CV-00018-M, 2005 WL 1877964, at *2 (W.D. Ky. Aug. 5, 2005); *Oliver v. City of*

*Memphis*, No. 04-2074-B, 2004 WL 3316242, at *4 (W.D. Tenn. Dec. 2, 2004); *cf. Raub v. Correctional Med. Servs., Inc.*, No. 06- 13942, 2008 WL 160611, at *2 (E.D. Mich. Jan. 15, 2008) (denying motion to dismiss where complaint contained conclusory allegations of a custom or practice); *Cleary v. County of Macomb*, No. 06- 15505, 2007 WL 2669102, at *20 (E.D. Mich. Sept. 6, 2007) (same); *Morningstar v. City of Detroit*, No. 06-11073, 2007 WL 2669156, at *8 (E.D. Mich. Sept. 6, 2007) (same); *Chidester v. City of Memphis*, No. 02-2556 MA/A, 2006 WL 1421099, at *3 (W.D. Tenn. June 15, 2005).

Loyde's allegations are insufficient to establish that an official policy or custom of either the City of Ripley or the City of Henning caused injury to Loyde. The WTSP is a state prison, and neither municipality has the authority to control its operation or the employees who work there.

Loyde attempts to state a claim against CHC, a private corporation that contracts to provide medical care for inmates at the WTSP; however, the complaint does not assert a valid claim against CHC. "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)); *see also Parsons v. Caruso*, 491 F. App'x 597, 609 (6th Cir. 2012) (corporation that provides medical care to prisoners can be sued under § 1983). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care to prisoners. *Thomas*, 55 F. App'x at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001). CCA "cannot be held liable under a theory of respondeat superior." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). Instead, to prevail on a § 1983 claim against CCA, Plaintiff "must

show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights.  *Id.*  The complaint does not allege that Loyde suffered any injury because of an unconstitutional policy or custom of CHC.

Loyde alleges that the Defendants' actions were part of a general conspiracy against him; however, these claims do not adequately allege a civil conspiracy.  As the Sixth Circuit Court of Appeals has explained:

> In *Spadafore v. Gardner*, 330 F.3d 849 (6th Cir. 2003), we stated the standard governing a § 1983 conspiracy claim:
>
>> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action.  Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy.  Each conspirator need not have known all of the details of the illegal plan or all of the participants involved.  All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.
>
> 330 F.3d at 854 (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)).  Although circumstantial evidence may prove a conspiracy, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983."  *Id.* (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)); *accord Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004).  That pleading standard is "relatively strict."  *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).

*Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011).  An assertion, unaccompanied by supporting facts, that parties conspired with each other is a legal conclusion that a court need not accept as true.  *Id.* at 563-64 (collecting cases).  Allegations of "a plan or agreement to violate [the plaintiff's] constitutional rights" is required.  *Id.* at 564.  Loyde's allegations that Defendants conspired with each other is entirely devoid of supporting facts.

The participation of Defendants Schofield, Woodall, Holloway, Sanders, Temple, and Pavletic in processing or denying Loyde's grievances cannot in itself constitute sufficient

personal involvement to state a claim of constitutional dimension. *Simpson v. Overton*, 79 F. App'x. 117, 2003 WL 22435653 (6th Cir. 2003); *see also Martin v. Harvey*, 14 F. App'x. 307, 2001 WL 669983, at *2 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). Section 1983 liability may not be imposed against a defendant for "a mere failure to act" based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d at 300; *Lillard*, 76 F.3d at 727-28.

Similarly, Loyde also has no cause of action against these Defendants for failing to investigate or take remedial measures to the extent they were aware of his grievances and complaints. Although failure to investigate may give rise to § 1983 supervisory liability, *see Walker v. Norris*, 917 F.2d 1449, 1457 (6th Cir. 1990) and *Marchese v. Lucas*, 758 F.2d 181, 188 (6th Cir. 1985), the reasoning in *Walker* and the analysis in its progeny teach that evidence of a failure to investigate can establish municipal liability only. In *Dyer v. Casey*, No. 94-5780, 1995 WL 712765, at *2 (6th Cir. Dec. 4, 1995), the Court stated that "the theory underlying [*Marchese*] is that the municipality's failure to investigate or discipline amounts to a 'ratification' of the officer's conduct."

In *Walker*, the Sixth Circuit distinguished *Marchese* because the Court "imposed the broad investigative responsibilities outlined in Marchese upon the Sheriff in his official capacity." *Walker*, 917 F.2d at 1457 ("The Sheriff is sued here in his official capacity and in that capacity, he had a duty to both know and act."). In 1998, the Sixth Circuit affirmed the dismissal of a claim of supervisory liability based on the "failure to investigate," stating:

> Young's claim against defendants McAninch and Goff is based solely on their alleged failure to investigate defendant Ward's behavior towards Young. Although Young stated that defendants McAninch and Goff had knowledge of his allegations against defendant Ward, this is insufficient to meet the standard that they either condoned, encouraged or knowingly acquiesced in the misconduct.

*Young v. Ward*, No. 97-3043, 1998 WL 384564, at *1 (6th Cir. June 18, 1998).

Loyde apparently sues Defendant Sanders because he failed to prosecute inmate Moore for assault. However, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Booth v. Henson*, 290 F. App'x 919, 920 (6th Cir. 2008). The decision of whether to institute state or federal criminal proceedings is a decision committed wholly to the discretion of the State District Attorney or the United States Attorney. This Court cannot order that inmate Moore be charged with a crime.

Loyde has multiple claims for Eighth Amendment violations including failure to protect and medical indifference. For a convicted prisoner, such claims arise under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991).

An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. at 298; *Williams v. Curtin*, 631 F.3d at 383; *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298.

To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298 (internal quotation marks omitted). *See also Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) ("To succeed in an Eighth Amendment challenge, [a prisoner] must establish that . . . a

single, identifiable necessity of civilized human existence is being denied . . . ."). The Constitution "does not mandate comfortable prisons." *Wilson*, 501 U.S. at 298 (internal quotation marks and citation omitted). "[R]outine discomfort is part of the penalty that criminal offenders pay for their offenses against society." *Hudson*, 503 U.S. at 9 (internal quotation marks and citation omitted). Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* at 9.

In considering the types of conditions that constitute a substantial risk of serious harm, the Court evaluates not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency, *i.e.*, that society does not choose to tolerate the risk in its prisons. *Helling v. McKinney*, 509 U.S. 25, 36 (1993). The Supreme Court has also emphasized that prisoners can rarely establish an Eighth Amendment violation from a combination of conditions of confinement that, in themselves, do not rise to the level of a constitutional violation:

> *Some* conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing as amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.

*Wilson*, 501 U.S. at 304-05 (citation omitted); *see also Thompson v. Cnty. of Medina*, 29 F.3d 238, 242 (6th Cir. 1994) ("Eighth Amendment claims may not be based on the totality of the circumstances, but rather must identify a specific condition that violates" a particular right); *Carver v. Knox Cnty.*, 887 F.2d 1287, 1294 (6th Cir. 1989) (same).

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 297, 302-03. The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling*, 509 U.S. at 32; *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street*, 102 F.3d at 814; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus,

> *[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.* This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38, 114 S. Ct. at 1979 (emphasis added; citations omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment."). The subjective component must be evaluated for each defendant individually. *Bishop v. Hackel*, 636 F.3d 757, 767 (6th Cir. 2011); *see also id.* at 768 ("[W]e

must focus on whether each individual Deputy had the personal involvement necessary to permit a finding of subjective knowledge.").

For purposes of this screening, Loyde has stated a plausible claim for violation of the Eighth Amendment against Defendant Ross, who allegedly saw the assault against Loyde, then walked away instead of stopping the assault. However, Loyde's claims that Defendant Brent Williams allowed information to be in the hands of untrained employees leading to the assault fail to sufficiently state that Defendant Williams had the subjective knowledge necessary for an Eighth Amendment violation.

Loyde further contends that the Defendants were deliberately indifferent to his need for medical care. Specifically, Loyde alleges that he was seen by Defendant Lynette Williams and explained his need for treatment but that she failed to provide any treatment. (ECF No. 15-1 at 8-9.) In the context of an Eighth Amendment claim based on a lack of medical care, the objective component requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (internal quotation marks omitted); *see also Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005).

For purposes of this screening, Loyde has alleged a plausible claim for violation of the Eighth Amendment against Defendant Lynette Williams.

### III. PENDING MOTIONS

Loyde filed two motions on April 20, 2016, a Motion to include § 1983 Complaint for Medical Authorization Mutual Agreement Form (ECF No. 13) and a Motion for Production

(ECF No. 14). First, Loyde's discovery requests are premature because process has not yet been served on any Defendant. Second, all discovery in this case should be conducted in accordance with Rules 26 through 37 of the Federal Rules of Civil Procedure. Discovery is to be conducted between the parties, without the direct involvement of the Court if possible. Thus, after service of process, Plaintiff should serve his discovery requests on the Defendants' attorneys or on a Defendant if he or she is unrepresented, without filing a motion with the Court. If a discovery dispute arises that cannot be resolved without the Court's intervnetion, an appropriate motion may be filed at that time. For these reasons, Loyde's discovery motions are DENIED.

## IV. CONCLUSION

The Court DISMISSES Loyde's complaint against Defendants State of Tennessee, TDOC, Schofield, Holloway, Unit Manager Brent Williams, CHC, Sanders, Temple, Woodall, and Pavletic for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Process will be issued for Defendants Ross and Lynette Williams in their individual capacities.

It is ORDERED that the Clerk shall issue process for Defendants C/O FNU Ross and Dr. Lynette Williams and deliver that process to the U.S. Marshal for service. Service shall be made on Defendants Ross and Lynette Williams pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10), either by mail or personally if mail service is not effective. All costs of service shall by advanced by the United States.

It is further ORDERED that Loyde shall serve a copy of every subsequent document he files in this cause on the attorneys for Defendants Ross and Lynette Williams or on any unrepresented Defendant. Loyde shall make a certificate of service on every document filed.

Loyde shall familiarize himself with Federal Rules of Civil Procedure and this Court's Local Rules.[5]

Loyde shall promptly notify the Clerk, in writing, of any change of address or extended absence.  Failure to comply with these requirements, or any other order of the Court may result in the dismissal of this case without further notice.

IT IS SO ORDERED.

 s/ **James D. Todd**           
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[5] A copy of the Local Rules may be obtained from the Clerk.  The Local Rules are also available on the Court's website at www.tnwd.courts.gov/pdf/content/LocalRules.pdf.